# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## FILE NO.: 5:24-cv-00288-M-KS

| | |
|---|---|
| KEITHA BLACKBURN,<br>　　　　　　Plaintiff,<br>　　v.<br><br>INEOS AUTOMOTIVE AMERICAS, LLC<br>and GREGORY J. CLARK,<br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

**NOW COMES** Plaintiff, by and through undersigned counsel, in Plaintiff's Memorandum in Opposition of Defendants' Motion to Dismiss Plaintiff's Amended Complaint and in support of its position Plaintiff sets forth as follows:

## STATEMENT OF CASE

Plaintiff filed its Complaint alleging eight causes of action against Defendants on May 23, 2024. Defendants requested an Extension of time on June 20, 2024, making Defendants' responsive pleading due June 21, 2024. Defendants filed a Motion to Dismiss Plaintiff's claims and Memorandum in support of that motion, pursuant to Fed. R. Civ. P. 12 (b)(6) on July 31, 2024. In response to the Motion, Plaintiff filed an amended complaint on August 21, 2024. Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint on September 3, 2024. Plaintiff requested an extension of time to respond which was granted to October 15, 2024. Plaintiff now submits this Memorandum in opposition of that motion.

## RELEVANT FACTS AS ASSERTED IN AMENDED COMPLAINT

On April 4, 2022, Plaintiff began her employment with Defendant, Ineos, as the fifth employee of the company. (Am. Compl. ¶10). She had a valid employment contract with Ineos, solidifying her position within the company. (Am. Compl. ¶62-66). As a condition of her

employment, the Plaintiff relocated from Atlanta, Georgia, to Raleigh, North Carolina. (Am. Compl. ¶18).

This move occurred the weekend following the 4th of July holiday in 2022. (Am. Compl. ¶18). On October 31, 2022, Plaintiff reported to Clark that she experienced hostility from a white male co-worker, Steve Jeffes, which caused her anxiety and fear. (Am. Compl. ¶26-31). The following day, on or around November 1, 2022, she met with Mr. Jeffes and Colin Burke, during which Mr. Jeffes denied any inappropriate behavior. (Am. Compl. ¶29). Later that evening, Clark communicated with the Plaintiff via WhatsApp, an unauthorized channel, leaving no official documentation of the conversation. (Am. Compl. ¶27-31).

On or around November 7, 2022, Mr. Jeffes sent an apology email to the Plaintiff following complaints from Mr. Burke and Ms. Lind. (Am. Compl. ¶ 31). By the end of 2022, the Plaintiff was informed that support staff would be hired. (Am. Compl. ¶13).

However, it wasn't until January 30, 2023, that Roz Mario was hired as the first support staff member. (Am. Compl. ¶16). He began working and was immediately required to travel frequently. (Am. Compl. ¶16). On April 12, 2023, the Plaintiff received a bonus letter and a salary increase due to her satisfactory performance. (Am. Compl. ¶34). Her salary was increased to $204,555.00, and she received a bonus of $5,958.00. (Am. Compl. ¶64).

Sometime between February 2023 and May 2023, Clark continued to call the Plaintiff "Sweetheart" despite her objections. (Am. Compl. ¶33). The following day, on May 24, 2023, the Plaintiff was terminated by Ineos without prior warning or performance reviews. (Am. Compl. ¶35).

## I.      STANDARD OF REVIEW FOR RULE 12(b)(1)

The standard of review for a motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) is whether the complaint fails to state facts upon which jurisdiction can be founded. "All the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982).

This standard is different than a Rule 12(b)(6) motion. In a Rule(b)(1) motion, the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.*, 320 F.Supp.2d 378, 388 (M.D.N.C.2004) (citing Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir.1991)). "When the jurisdictional facts are intertwined with facts central to the merits of a case, '[t]he proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.'" *Lambeth v. Carolina Personnel Co., Inc.*, 358 F.Supp.2d 484, 486 (M.D.N.C. 2005) (quoting *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir.1999)) (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir.1997) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir.1981))) (Rule 12(b)(1) motion is not a proper vehicle to resolve jurisdictional issue in Title VII case where the merits and jurisdictional questions are closely related); *Bryant v. Clevelands, Inc.*, 193 F.R.D. 486, 488-89 (E.D.Va.2000); *McGinnis v. Southeast Anesthesia Assocs., P.A.*, 161 F.R.D. 41, 44 (W.D.N.C.1995). *Id.*  In the case at hand, the merits and jurisdictional questions are so closely related.  Accordingly, a Rule 12(b)(1) motion is not appropriate in this case.

## II.      STANDARD OF REVIEW FOR RULE 12(b)(6)

3

The standard of review for Defendant's Rule 12(b)(6) motion to dismiss is whether or not Plaintiff failed to state a claim upon which relief can be granted. The Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) held that the often "questioned, criticized, and explained away" language from its prior decision in *Conley v. Gibson*, 255 U.S. 41 (1957), that motions to dismiss under Rule 12(b)(6) should only be granted if there are "no set of facts" that could be proven to support relief, "has earned its retirement" "after puzzling the profession for 50 years." *Twombly*, 550 U.S. at 561-63. Instead, the Court made clear that Fed. R. Civ. P. Rule 8 requires that a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Without requiring at least facial plausibility, "claim[s] would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id*. at 561 (emphasis added). Such a minimal pleadings standard would render meaningless a court's "power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id*. at 558 (quoting *Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 528 n.17 (1983)).

In *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), the Supreme Court clarified that the *Twombly* plausibility pleadings standard applies to "all civil actions." *Iqbal*, 129 S. Ct. at 1953. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 555, 557). Accordingly, there is no heightened standard for employment discrimination

4

claims. The standard for a motion to dismiss has to do with Plaintiff's allegations on the face of the complaint. Plaintiff is not required to prove her case in the Complaint.

## **ARGUMENT**

### I. PLAINTIFF HAS EXHAUSTED HER ADMINISTRATIVE REMEDIES BECAUSE HER AMENDED CHARGE RELATES BACK TO THE ORIGINAL FILING DATE.

Pursuant to 29 C.F.R. § 1601.12:

> (b) Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred. 29 C.F.R. § 1601.12 (2024).

Plaintiff's Amended EEOC charge relates back to the original EEOC Charge. In her original charge, the EEOC intake officer marked off the grounds of discrimination as race, sex and retaliation. These grounds were also listed on the amended charge. The original charge does state that "Greg Clark, began referring to [Plaintiff] as 'Sweetheart' in a salacious manner which made me quite uncomfortable and intimidated. I reminded him of my proper name; however, he continued to use 'sweetheart' as his moniker for me as a form of harassment." (Amend. Compl. Ex. A.) Plaintiff told him to refer to her by her proper name raising objection to the use of "sweetheart" when referring to her. She also listed this in her amended charge. In her amended charge, she further explained and clarified that she "informed Mr. Clark on multiple occasions that he should not call [her] [sweetheart]." (Am. Compl. Ex. B.)

5

Further, Defendants claim that Plaintiff's race claims do not relate back. However, Plaintiff identifies race as the grounds for Defendants' actions in both the original charge of discrimination as well as the amended charge of discrimination. Plaintiff's original charge states that "there are several incidents of negative bias toward me during my employment that can be provided later if necessary." This statement along with the grounds of discrimination marked as "race" puts Defendants on notice of Plaintiff's race discrimination claims. In her amended charge, Plaintiff cites that she was "discriminated and retaliated against [] due to [her] sex and race, in violation of Title VII of the Civil Rights Act 1964, as amended, by harassing [her], sexually harassing [her] and then discharging [her] from employment and refusing to pay [her] for her accrued time off."

Courts are to construe administrative charges liberally when determining the claims of the original charge as they are typically not prepared by lawyers. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (see also *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir.1988)). If "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Chacko* at 509 citing *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995).

Contrary to Defendants' arguments, Plaintiff's race allegations do relate back. In the case at hand, Plaintiff's amended charge is clearly within the scope of the EEOC charge and any charges that have arisen from an investigation thereof. As a result, the Amended Charge relates back to the date of the original charge.

## II.  RACE AND SEX DISCRIMINATION UNDER TITLE VII AND SECTION 1981

### A.  *Plaintiff states a Section 1981 claim and not a Title VII claim against Clark.*

6

**B. *Plaintiff makes factual allegations to support a race and sex discrimination claim.***

To survive a motion to dismiss a Title VII race and sex discrimination claim, a plaintiff must allege facts to make it plausible that the employer treated them adversely because of their race. Further, the plaintiff is not required to plead facts establishing a prima facie case of discrimination but must meet the ordinary pleading standards established in *Iqbal* and *Twombly* to survive a motion to dismiss. *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) citing *McCleary–Evans v. Maryland Department of Transportation*, 780 F.3d 582, 585 (4th Cir. 2015). However, a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by [the relevant] statute" in compliance with *Iqbal*. *Id.*

To state a claim for race and sex discrimination under Title VII, a plaintiff must allege "the existence of some adverse employment action [.]" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Id*. An adverse employment action, for example, must come with a "decrease in compensation, job title, level of responsibility, or opportunity for promotion," or involve a reassignment with "some significant detrimental effect." *Id*. at 376. *Clark v. Sampson Reg'l Med. Ctr., Inc.*, 706 F. Supp. 3d 543, 557 (E.D.N.C. 2023)

Plaintiff has met the pleading standard by alleging facts in its complaint to satisfy the elements of race and sex discrimination. Plaintiff has alleged that she "was wrongfully terminated on the basis of her race and gender; for objecting to her supervisor, Gregory J. Clark's advances." (Am. Compl. ¶ 40). She has further alleged that she "was performing her job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action. She received a bonus and salary increase one (1) month prior to her termination. Plaintiff was replaced by a white male." (Am. Compl. ¶¶ 41-42).

7

The Fourth Circuit has "previously admonished district courts, albeit in unpublished, non-precedential decisions, that imposing unique burdens or stereotypical expectations on an individual based on her membership in a protected group is illicit discrimination, even though the defendant may not discriminate consistently against *every* woman or minority under *all* conditions. *See, e.g.*, *Wagner v. Dillard Dep't Stores, Inc.*, 17 Fed.Appx. 141, 151 (4th Cir. 2001) (per curiam) (affirming a district court decision finding that an employer's stereotypical assumption that pregnant women will eventually require substantial absences from work violated Title VII). It is past the time when that admonishment should be given precedential force." *Woods* at 651.

Plaintiff has further alleged that she was treated differently than white employees, even a white female employee. Additionally, she alleged: her supervisor gave her pushback on some of her requests from the British headquarters (Am. Compl. ¶ 17); she was required to relocate to North Carolina as a condition of her employment while her white female colleague was allowed to work from Atlanta, Georgia remotely (Am. Compl. 18-21); and "[o]ther male employees were also given relocation arrangements that accommodated a transition timeframe that befitted their life and family commitments. Plaintiff was told that she need to be in North Carolina by the summer of 2022 of which she which included her having to quickly sell her house in Atlanta and facilitate her move." (Am. Compl. ¶ 22-23).

While Defendants believe that Plaintiff's claims don't suggest a claim for race, Title VII recognizes hybrid classes or combination classes of discrimination which is present in the case at hand. In *Jeffers v. Thompson*, the court recognized that Title VII prohibits employment discrimination based on any of the named characteristics, whether individually or in combination. *Jeffers v. Thompson*, 264 F.Supp.2d 314 (2003). "The court must determine

8

'whether the employer discriminates on the basis of that combination of factors, not just whether it discriminates against people of the same race or the same sex.'" (*Jeffers* quoting *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1562 (9th Cir.1994)).

Additionally, in *Briggs v. Brown & Williamson Tobacco Corp., Inc.*, the court found it appropriate to designate two subclasses in a civil rights action challenging racial and sexual discrimination in employment practices, further supporting the recognition of hybrid classes under Title VII. *Briggs v. Brown & Williamson Tobacco Corp., Inc.*, 414 F.Supp. 371 (1976).

Plaintiff identified different treatment that she received from her white male and white female counterparts regarding the relocation requirement that was only imposed on Plaintiff. This shows not only a bias towards white employees but a higher standard held to Plaintiff as an African American female.

Plaintiff also identified different treatment that she received when reporting Steve Jeffs, a white male co-worker, to Clark. (Am. Compl. ¶¶ 26-28). As an African American female, her complaints of bullying weren't taken seriously. It wasn't until after Mr. Burke (white male) and Ms. Lind (white female) complained about Mr. Jeffes that he sent an email of apology to Plaintiff. (Am. Compl. ¶¶ 27, 31).

### C. *Plaintiff alleges a plausible claim under Section 1981.*

Defendant Ineos and Defendant Clark are liable to Plaintiff under Section 1981. In analyzing whether a plaintiff has plausibly alleged sufficient individual action to allow a section 1981 claim to proceed, courts may examine whether the individual defendant had the capacity to terminate the plaintiff's employment. Courts also may examine whether plaintiff plausibly alleges direct evidence of the defendant's racially discriminatory animus and shows that the individual defendant took part in the adverse employment action. *Marshall v. C & S Rail Servs., LLC*, No. 1:19CV986, 2021 WL 1341801, at *6 (M.D.N.C. Apr. 9, 2021) (quoting *Hawthorne v.*

9

*Va. State Univ.*, 568 F. App'x 203, 204-05 (4th Cir. 2014)); see also *Benjamin v. Sparks*, 173 F. Supp. 3d 272, 283 (E.D.N.C. 2016) and *Hilderbrand v. Pelham Transp. Corp.*, 1:20CV1020 (M.D. N.C. Jun 30, 2021).

Plaintiff's Amended Complaint of at least 81 allegations, support a claim against all defendants for a violation of 42 U.S.C. § 1981. Defendant Clark terminated Plaintiff. (Am. Compl. ¶ 40). For the reasons stated above, Plaintiff has plausibly alleged a claim for race discrimination under ¶ 1981.

### III. HOSTILE WORK ENVIRONMENT UNDER TITLE VII & § 1981

The elements for hostile work environment under Title VII and Section § 1981 are that the Plaintiff "workplace harassment was '(1) unwelcome, (2) based on race [or a protected class], and (3) sufficiently severe and pervasive to alter the conditions of employment and create an abusive atmosphere.' [She] also needed to demonstrate that 'there is some basis for imposing liability' on [the defendant] for this harassment." *White v. Bfi Waste Services, LLC*, 375 F.3d 288 (4th Cir., 2004) quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001).

Further, "an employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it. Negligence sets a minimum standard for employer liability under Title VII." *Burlington Industries v. Ellerth*, 118 S.Ct. 2257, 524 U.S. 742, 141 L.Ed.2d 633 (1998). In other words, neglect by the employer of the situation is grounds for imposing liability against the employer for Title VII violations.

In the case at hand, the harassment against Plaintiff was unwanted, was based on her sex and was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive atmosphere. (Am. Compl. ¶ 54). Despite Defendants' assertions that the harassment against Plaintiff was not severe or pervasive, Plaintiff cites an excessive number of acts of

10

harassment by Defendant's employees in her complaint. These acts included behavior such as: allowing Clark to continue to call her "Sweetheart" despite her repeatedly telling him not to (Am. Compl. ¶ 44) and allowing Plaintiff to be bullied by co-worker, Steve Jeffes causing her anxiety and fear (Compl. ¶¶ 26-29). Defendants allowed a culture of harassment to continue at its company.

## IV. RETALIATION UNDER TITLE VII

"A plaintiff can establish a prima facie case of retaliation by demonstrating that: (1) [s]he engaged in a protected activity; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between the first two elements." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004), *Felt v. Mei Techs., Inc.* (4th Cir., 2014).

"There was temporal proximity between Plaintiff's last complaint of the sexual harassment to her supervisor and her termination. Plaintiff repeatedly told Clark not to call her "Sweatheart." Plaintiff was terminated within weeks of telling Clark not to call her "Sweetheart." (Am. Compl. ¶ 50). Plaintiff's termination was not due to her work performance because she received a raise and a bonus one (1) month prior to her termination. (Am. Compl. ¶ 54). Accordingly, any proffered reasons by Defendants for the termination would be pretextual.

## V. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

Plaintiff has a private right of action for race and sex discrimination "for rejecting Clark's sexual advances towards her and her verbal opposition to his advances in calling her "Sweetheart." ((Am. Compl. ¶57)). North Carolina courts recognize a public policy exception of discrimination based on the Equal Employment Practices Act (EEPA). Under the EEPA, "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race…[or] sex…by employers…" N.C. Gen. Stat. 143-422.2(a) (2024).

11

In *Woody v. AccuQuest Hearing Center, LLC*, the Court held that "although no private cause of action exists under the EEPA, '[t]his Court has repeatedly recognized that the EEPA may form the basis for a wrongful discharge claim.'" *Woody v. AccuQuest Hearing Ctr., LLC*, 284 N.C. App. 540, 546, 877 S.E.2d 1, 6 (quoting *Jarman v. Deason*, 173 N.C. App. 297, 301, 618 S.E.2d 776, 779 (2005)). Accordingly, Plaintiff's claim for wrongful termination on the basis of race and sex must survive the defendants' motion.

## VI. BREACH OF IMPLIED CONTRACT

Our courts have defined an "implied in fact contract" as "an agreement between parties, but the terms of the agreement have not been fully expressed in words and, instead, are established by the parties' conduct." *Thompson-Arthur Paving Co., a Div. of APAC-Carolina, Inc. v. Lincoln Battleground Associates*, 95 N.C. App. 270, 280, 382 S.E.2d 817, 823 (1989). "An implied contract is valid and enforceable as if it were express or written." *Sanders v. State Personnel Com'n*, 183 N.C. App. 15, 21, 644 S.E.2d 10, 14 (2007).

Plaintiff alleges that it entered into a unilateral contract with Ineos as Director of Public Relations and Marketing Communications for Ineos, that her "services were knowingly and voluntarily accepted," that they "were not given gratuitously," and that she was paid "approximately $198,600 base salary a year; a $12,000 vehicle allowance a year; a bonus structure up to twenty percent (20%); and benefits, including but not limited to: health benefits, 160 hours vacation time per year, and 401K retirement savings plan." (Am. Compl. ¶ 64). Additionally, April 12, 2023, Plaintiff received a raise that increased her salary to $204,555.00 and a bonus of $5,958.00." (Am. Compl. ¶ 65). Plaintiff's allegations plausibly allege the existence of an implied contract based on the parties' conduct.

North Carolina Courts have held that "[g]enerally, employment contracts that attempt to provide for permanent employment, or 'employment for life,' are terminable at will by either

party. Where the employee gives some special consideration in addition to his services, such as relinquishing a claim for personal injuries against the employer, removing his residence from one place to another in order to accept employment, or assisting in breaking a strike, such a contract may be enforced." *Burkhimer v. Gealy*, 39 N.C. App. 450, 454, 250 S.E.2d 678, 682 (1979), disapproved of by *Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 493 S.E.2d 420 (1997). See also *Sides v. Duke Univ.*, 74 N.C. App. 331, 345, 328 S.E.2d 818, 828 (1985), disapproved of by *Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 493 S.E.2d 420 (1997).

While *Kurtzman* later refused to recognize relocation of an employee as a factor in whether or not a contract was created between the employee and the employer, we believe that Ineos' induced Plaintiff into an employment contract by making promises to Plaintiff in that: 1) they hired her as "one of the founding executives to establish the business in the United States" (Am. Compl. ¶10); 2) that the support positions listed in the job description were real and that the allocated headcount of staff would be hired by the end of 2022 (Am. Compl. ¶13); 3) on her first day of work, Rachel Raff reiterated she would have people joining her soon (Am. Compl. ¶13); and she was required to locate to North Carolina from Atlanta as a condition of her employment, which was a requirement specific to her contract with employer as other employees were not required to do so (Am. Compl. ¶¶18-22).

These promises follow basic common law contract principles of reliance that are recognized under North Carolina contract law. Reliance, or collateral estoppel applies "when anyone, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is

permitted to deny the existence of such facts." *State Highway Comm'n. v. Thornton*, 271 N.C. 227, 240, 156 S.E.2d 248, 258 (1967) (quoting *Boddie v. Bond*, 154 N.C. 359, 365, 70 S.E. 824, 826 (1911)) See also *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 17, 591 S.E.2d 870, 881 (2004).

In the case at hand, Defendant Ineos induced Plaintiff to work for the company and relocate to North Carolina from Georgia under false representations regarding the conditions of her employment. Defendant Ineos Further breached its contract in its termination of Plaintiff. Accordingly, Plaintiff has plausibly alleged a breach of implied contract claim.

### VII.    TORTIOUS INTERFERENCE WITH EMPLOYMENT CONTRACT

The elements under a claim for tortious interference with contract are:

"(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff." *Bloch v. Paul Revere Life Ins. Co.*, 143 N.C.App. 228, 547 S.E.2d 51 (N.C. App. 2001) (citing *Embree Construction Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992)) (citing *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988)). "A plaintiff may maintain a claim for tortious interference with contract even if the employment contract is terminable at will." *Id. (See also Lenzer v. Flaherty*, 106 N.C.App. 496, 512, 418 S.E.2d 276, 286, disc. review denied, 332 N.C. 345, 421 S.E.2d 348 (1992) (citing *Smith v. Ford Motor Co.*, 289 N.C. 71, 85, 221 S.E.2d 282, 290 (1976)).

When a party induces another "party to terminate or fail to renew a contract with another, [they] may be held liable…if the third-party acts without justification." *Robinson,*

14

*Bradshaw & Hinson, P.A. v. Smith*, 129 N.C.App. 305, 317, 498 S.E.2d 841, 850, disc. review denied, 348 N.C. 695, 511 S.E.2d 649 (1998) (quoting *Fitzgerald v. Wolf*, 40 N.C.App. 197, 199, 252 S.E.2d 523, 524 (1979)) The justification depends on "the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor[,] and the contractual interests of the other party." *Id* at 850.

Defendant argues that Clark cannot be held liable because he acted as a supervisor within the scope of his employment. However, there is no qualified immunity for a "non-outsider" who acts with legal malice when he performs wrongful acts or "exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Id* at 851.

Not only did Clark exceed his legal right or authority to prevent Plaintiff's contractual right with Ineos, his intentions and motives were malicious. "[A] defendant's motive or purpose is the determining factor as to liability in actions for interference with economic relations, 'and sometimes it is said that bad motive is the gist of the action.'" *Cameron v. New Hanover Memorial Hosp., Inc.*, 293 S.E.2d 901, 58 N.C.App. 414 (N.C. App. 1982) (citing Prosser §129, pp. 927-28).

Clark retaliated against Plaintiff for her: standing up for herself regarding the harassment she received; his inappropriate behavior towards her; rejecting his advances; and for Plaintiff holding the company to the promises they made in inducing her to work for the company. Additionally, Clark discriminated against Plaintiff and held her to a different standard than white employees. Plaintiff's raise and bonus shows that she was performing her job beyond the expectations of her employer and that Clark had no legitimate reason for terminating Plaintiff. Accordingly, Plaintiff has plausibly alleged a claim for tortious interference of an employment contract.

## VIII. PLAINTIFF HAS PLAUSIBLY ALLEGED A CLAIM FOR BREACH OF IMPLIED FAITH AND FAIR DEALING

Defendants claim that because there is no evidence to support a breach of contract claim, then Plaintiff's claim for breach of implied duty of good faith and fair dealing cannot survive a motion to dismiss. However, this argument is not supported by the facts. Plaintiff has plausibly alleged a breach of contract claim. Accordingly, Plaintiff's claim for breach of covenant of good faith and fair dealing survives.

## IX. SUFFICIENTLY PLED A PLAUSIBLE WAGE AND HOUR ACT VIOLATION.

Pursuant to N.C. Gen. Stat. § 95-25.6, "every employer shall pay every employee all wages and tips accruing to the employee on the regular pay day…" N.C. Gen. Stat. § 95-25.6 (2024). An employer may not withhold wages unless permitted by statute. N.C. Gen. Stat. § 95-25.8 (2024). Employers are not required to provide vacation plans for their employees. "However, if an employer provides these promised benefits for employees, the employer shall give all vacation time off or payment in lieu of time off in accordance with the company policy or practice. Employees shall be notified in accordance with G.S. 95-25.13 of any policy or practice which requires or results in loss or forfeiture of vacation time or pay. Employees not so notified are not subject to such loss or forfeiture." N.C. Gen. Stat. § 95-25.12 (2024).

There was no notification in accordance with N.C. Gen. Stat. § 95-25.13 that would allow the Ineos to withhold Plaintiff's vacation pay. Ineos attempted to make Plaintiff's vacation play contingent on her signing a severance agreement. It wasn't until the North Carolina initiated an investigation ten (10) months later that Ineos paid her vacation benefit. (Am.Compl. Ex. D, Ex. E). Even though Defendant paid the vacation pay, which is wages under North Carolina law, Plaintiff is still entitled to "interest at the legal rate set forth in G.S. 95-25.6." N.C. Gen. Stat. 95-25.22(a) (2024). Moreover, Plaintiff is also entitled to liquidated damages, costs, fees and

reasonable attorneys' fees pursuant to N.C. Gen. Stat. 95-25.22 (2024). As a result, Plaintiff has plausibly alleged a wage and hour claim under North Carolina.

<u>Conclusion</u>

The defendants' Motion to Dismiss attempts to dismiss Plaintiff's claims based on evidence it intends to present in its defense. Plaintiff has met the plausibility standard and sufficiently pled her claims. Accordingly, and for the reasons stated above, dismissal under Rules 12(b)(1) and 12 (b)(6) of the Rules of Civil Procedure is inappropriate in this case. Therefore, Plaintiff respectfully requests that the court deny Defendants' Motion to Dismiss. Respectfully submitted,

This the 15th day of October, 2024.

**ATTORNEY FOR PLAINTIFF**

<u>/s/ Carena Brantley Lemons</u>
Carena Brantley Lemons
North Carolina Bar No. 28249
THE LEMONS LAW FIRM, PLLC
8480 Honeycutt Rd #200
Raleigh, North Carolina  27615
Telephone:  919.688.7799
Facsimile:  866.302.5417

## CERTIFICATE OF WORD COUNT

This is to certify that the word count in this brief is 5,058 words. This number includes the body of the brief, headings and footnotes. It does not include the caption, signature lines, date, certificate of service, and any cover page or index pursuant to LR 7.2(f)(3).

This the 15th day of October, 2024.

THE LEMONS LAW FIRM, PLLC

/s/ Carena Brantley Lemons
Carena Brantley Lemons
Attorney for Plaintiff
North Carolina Bar No. 28249
8480 Honeycutt Rd. #200
Raleigh, North Carolina 27615
Telephone: 919.688.7799
Fax: 866.302.5417
carena@thelemonslawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have served a copy of the foregoing memorandum of law upon all

parties via ECF which will send notification to the parties, in the manner prescribed by Rule 5 of

the Rules of Civil Procedure, with the same addressed to:

Tory Ian Summey
N.C. State Bar No. 46437
Parker Poe Adams & Bernstein LLP
620 South Tryon Street, Suite 800
Charlotte, NC 28202
T: (704) 335-9036
F: (704) 334-4706
Email: torysummey@parkerpoe.com

Jeremy D. Locklear
NC State Bar No. 50842
Parker Poe Adams & Bernstein LLP
PNC Plaza
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina 27601
T: (919) 828-0564
F: (919) 834-4564
Email: jeremylocklear@parkerpoe.com


This the 15th day of October, 2024.

**ATTORNEY FOR PLAINTIFF**



/s/ Carena Brantley Lemons
Carena Brantley Lemons
North Carolina Bar No. 28249
THE LEMONS LAW FIRM, PLLC
8480 Honeycutt Rd #200
Raleigh, North Carolina 27615
Telephone: 919-688-7799
Facsimile: 866-302-5417
Email: carena@thelemonslawfirm.com

19