# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

Case No. 5:24-CV-00288-M-KS

KEITHA BLACKBURN,

    Plaintiff,

v.

ORDER

INEOS AUTOMOTIVE AMERICAS,
LLC, and GREGORY J. CLARK,

    Defendants.

This matter comes before the court on Defendants INEOS Automotive Americas, LLC ("INEOS") and Gregory J. Clark's ("Clark") (collectively, "Defendants") Motion to Dismiss [DE 21]. For the reasons that follow, Defendants' Motion to Dismiss is granted in part and denied in part.

## I.  Plaintiff's Allegations of Fact[1]

According to the Amended Complaint, Plaintiff (a black female) was hired and began working in April 2022 as the Director of Public Relations and Marketing Communications for INEOS, a British automotive company. DE 17 at 2. As a condition of Plaintiff's employment, INEOS required Plaintiff to relocate from Atlanta, Georgia, to Raleigh, North Carolina, where

---

[1] At this stage, the court "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Within that scope, the "court accepts all well-pled facts as true and construes the[] facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

1

INEOS maintains its principal place of business. *See id.* at 1-3. INEOS afforded Plaintiff over three months to complete her relocation, which occurred in July of 2022. *Id.* at 4.

Although Plaintiff was not permitted to work remotely from Atlanta in perpetuity, the Amended Complaint alleges that one of Plaintiff's white female colleagues was allowed to work from home in Atlanta. *Id.* This white colleague was also allegedly approved to hire support staff before Plaintiff. *Id.* at 5. Plaintiff further alleges that other male employees were given relocation arrangements that were more accommodating than what she received. *Id.* at 4. The Amended Complaint does not provide any details regarding these other employees, such as their positions or duties. But these other employees would not have been in the same department as Plaintiff. *See id.* at 3 (alleging that Plaintiff "was the only person employed in her department").

Plaintiff's manager was Clark, Executive Vice President of INEOS and a white male. *Id.* In October 2022, Plaintiff alleges that she met with Clark and complained of hostility from a co-worker, Steve Jeffes, who is also a white male. *Id.* at 5. The Amended Complaint does not detail this hostility, other than to describe it as "bullying." *Id.* Clark allegedly instructed Plaintiff to confront Jeffes on a Microsoft Teams meeting with Colin Burke, a white, male co-worker whose presence would keep the call "on the up and up." *Id.*

In November 2022, Plaintiff met with Jeffes, who allegedly denied his behavior. *Id.* Plaintiff then sent Clark a follow-up message on WhatsApp, providing a summary of her conversation with Jeffes. *Id.* Clark allegedly did not address Plaintiff's complaints about Jeffes with INEOS' human resources department. *Id* at 6. However, approximately one week later, Jeffes sent an apology email to Plaintiff. *Id.* at 5. Plaintiff alleges that this apology email was sent only after certain white co-workers also complained about Jeffes. *Id.*

2

The Amended Complaint further alleges that, at some point between February and May 2023, Clark began calling Plaintiff "sweetheart" once or twice a week. *Id.* at 6. Plaintiff informed Clark on multiple occasions not to call her "sweetheart," but Clark "continued to do so." *Id.* On or around May 24, 2023, Plaintiff was terminated from her position. *Id.* Plaintiff filed a charge with the EEOC detailing Defendants' alleged discrimination on November 20, 2023. DE 17-1 at 2. She amended that charge on January 11, 2024. DE 17-2 at 2-3.

## II. Procedural History

Last year, Plaintiff filed a complaint against Defendants, raising claims for (1) race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981; (2) sexual harassment and hostile work environment in violation of Title VII; (3) retaliation in violation of Title VII; (4) wrongful termination in violation of public policy pursuant to N.C. Gen. Stat. § 143-422.2; (5) breach of implied contract; (6) tortious interference with contract; (7) breach of implied duty of good faith and fair dealing; and (8) violation of the North Carolina Wage and Hour Act, N.C.G.S. §§ 95-25.2, 95-25.7. DE 1 at 1-10. In lieu of filing an answer, Defendants filed a Motion to Dismiss for lack of subject-matter jurisdiction and for failure to state a claim. DE 11.

Shortly thereafter, Plaintiff filed an Amended Complaint, which raises the same claims as her original complaint, but rendered moot Defendants' original Motion to Dismiss. DE 17; *see also* DE 20 (order denying as moot DE 11). Defendants then filed a second Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim. DE 21. Defendants contend that Plaintiff failed to exhaust her administrative remedies, which deprives this court of subject-matter jurisdiction over certain of her claims. DE 22 at 7-9. Defendants further assert that each of

3

Plaintiff's claims fails on the merits. *Id.* at 9-30. Defendants' motion is fully briefed and ready for decision. DE 25 (response); DE 27 (reply).

### III. Standards of Review

  a. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Through such a motion, a defendant may raise either a facial or factual challenge to subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A facial challenge "contend[s] that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation mark omitted). A factual challenge contends "that the jurisdictional allegations of the complaint [a]re not true." *Adams*, 697 F.2d at 1219.

A district court treats facial and factual challenges to subject matter jurisdiction differently. "When a defendant makes a facial challenge to subject matter jurisdiction," the plaintiff is "afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration," namely that the court accepts the factual allegations as true and construes them in the light most favorable to the plaintiff. *Kerns*, 585 F.3d at 192. But with a factual challenge, the court may "go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Adams*, 697 F.2d at 1219. The "court should grant the Rule 12(b)(1) motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation mark omitted).

4

### b. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). As a result, the court accepts the complaint's factual allegations as true, and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet*, 591 F.3d at 255.

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And importantly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Likewise, "[l]abels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice." *ACA Fin. Guar. Corp. v. City of Buena Vista*, Virginia, 917 F.3d 206, 211 (4th Cir. 2019). Ultimately, when considering a motion to dismiss, the court must "draw on its judicial experience and common sense" to determine whether the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

### IV. Analysis

#### a. Exhaustion

Plaintiff's original EEOC charge contains a checked box for "Race," but its narrative section does not include any allegations of racial discrimination beyond a general statement that "[t]here are numerous other incidents of negative bias . . . that can be provided later if necessary." *See* DE 17-1 at 2. Defendants argue that the original EEOC charge is insufficient to serve as the

5

basis of Plaintiff's racial discrimination claims. DE 22 at 8. Rather, they contend that Plaintiff's racial discrimination claims must be based on her amended EEOC charge, which was filed outside the 180-day required period, and thus must relate back to the original charge to be considered. *Id.* Defendants assert that the amended charge does not relate back, and as a result, the court must dismiss Plaintiff's Title VII race-based claims. DE 22 at 8-9. Plaintiff argues that the amended charge does relate back, and that it can serve as the basis for her race-based claims. DE 26 at 5-6.

To the extent Defendants frame their exhaustion argument within the context of Rule 12(b)(1) of the Federal Rules of Civil Procedure, such an argument is unpersuasive because the Title VII charge-filing provision is "not of jurisdictional cast." *Fort Bend County, Texas v. Davis*, 587 U.S. 541, 550 (2019). An exhaustion challenge to a Title VII claim addresses a processing rule, not a jurisdictional prescription. *Id.* at 551. Accordingly, the court considers Defendants' exhaustion argument as targeting Plaintiff's compliance with a mandatory claim-processing rule, but not one that implicates the court's power to hear the case. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021) (explaining that, where a "requirement is not jurisdictional, it may be waived or forfeited").

As noted previously, Plaintiff raises a claim for race discrimination in violation of Title VII. DE 17 at 6. Prior to filing suit under Title VII, a plaintiff is required to exhaust her administrative remedies by filing a charge with the EEOC within 180 days of the alleged discrimination. 42 U.S.C.A. § 2000e-5(e)(1), (f)(1). A charge must be "sufficiently precise," in that it must "identify the parties" and "describe generally the action or practices complained of." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2002)).

6

The scope of a plaintiff's subsequent federal lawsuit is "determined by the charge's contents," meaning that "only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint" may form the basis of a plaintiff's suit. *Id.* Where the Title VII claims raised in a lawsuit exceed the scope of the EEOC charge and "any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999).

An employee's charge is meant to provide notice to the EEOC and the employer of the alleged discrimination. *Chacko*, 429 F.3d at 510. As such, a claim in litigation will "generally be barred" if the EEOC charge alleges discrimination on one basis and the ensuing litigation alleges discrimination on a separate basis. *Jones*, 551 F.3d at 300; *see also Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). For example, where a charge alleges only racial discrimination, but the complaint alleges sex discrimination, the plaintiff has not met the exhaustion requirement. *Id.* at 132-33. And "a charge that describes retaliation does not license a subsequent claim for direct discrimination." *Bir v. McKesson Corp.*, No. 5:22-CV-00412, 2023 WL 5960640, at *2 (E.D.N.C. Sept. 13, 2023).

In short, the "central factual allegations" of a plaintiff's formal suit must not run astray of the charge. *Chacko*, 429 F.3d at 506. Still, the exhaustion requirement "should not become a tripwire for hapless plaintiffs." *Syndor v. Fairfax County, Va.*, 681 F.3d 591, 594 (4th Cir. 2012). In handling this issue, the Fourth Circuit has sought to "strike a balance between providing notice to employers . . . and ensuring plaintiffs are not tripped up over technicalities." *Id.* That balance means that "a plaintiff's claims in her judicial complaint" must only be "reasonably related to her EEOC charge." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). After all, Title

7

VII establishes "a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *E.E.O.C. v. Com. Off. Prods. Co.*, 486 U.S. 107, 124 (1988); *cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (emphasizing that courts should liberally construe documents filed without assistance of counsel).

Defendants raise two challenges based on Plaintiff's EEOC charges: (1) that Plaintiff's marking of the "Race" box but failure to raise any race-based allegations in her original charge is insufficient on its own to support a claim for race discrimination; and (2) that Plaintiff's amended charge, which does contain factual allegations of race discrimination, is untimely and does not relate back to the original charge. DE 22 at 8-9. The court disagrees with Defendants on their first argument, so it does not need to consider the second.

As to the first argument, neither party identifies a case that directly considered whether a checked box, but no corresponding factual allegations, suffices as an exhaustion of administrative remedies.[2] But in an unpublished decision, the Fifth Circuit indicated that plaintiffs may administratively "identif[y]" their "claims" for exhaustion purposes "*either* by checking the appropriate box *or* otherwise describing the alleged discriminatory conduct in the narrative section of their charge." *Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 490 (5th Cir. 2010) (emphasis added). In addition, decisions from a variety of circuits hold that where a plaintiff *fails* to check a box, they may have failed to exhaust their administrative remedies. *See, e.g.*, *Jones* 551 F.3d at 300 (holding that plaintiff's checking the "retaliation" box and failure to check the "age," "sex," or "race" boxes was a failure to exhaust her administrative remedies with respect to age, sex, or race claims); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994);

---

[2] In support of their Motion, Defendants cite *Johnson v. Portfolio Recovery Associates, LLC* for this proposition, DE 22 at 8, but *Johnson* dealt with a retaliation claim where, on the plaintiff's EEOC charge, "the 'retaliation' box was *not* checked." *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 571 (E.D. Va. 2009) (emphasis added).

8

*Fundukian v. United Blood Services*, 18 Fed.App'x. 572, 575 (9th Cir. 2001); *Russell v. BSN Medical, Inc.*, 721 F.Supp.2d 465, 474 (W.D.N.C. 2010). Taken together, these cases suggest that checking a box on the EEOC charge carries with it at least some legal significance.

Additionally, the court notes that Plaintiff did do more than just check the "Race" box in her original EEOC charge; she also referred to "numerous other incidents of negative bias" that she could provide. DE 17-1 at 2. This statement is admittedly vague but, coupled with the check of the "Race" box, plausibly permits the inference that a reasonable investigation of Plaintiff's claim would reveal allegations of racial discrimination. *See Jones*, 551 F.3d at 300.

Considering the Fourth Circuit's liberal treatment of EEOC charges and repeated instruction to district courts that the exhaustion requirement "should not become a tripwire for hapless plaintiffs," *Syndor*, 681 F.3d at 594, the court assumes without deciding that Plaintiff has exhausted her administrative remedies in this case by checking the "Race" box and referencing "numerous other incidents of negative bias." DE 17-1 at 2. The court's conclusion on this issue is also influenced by the Fourth Circuit's "strong policy in favor of merits-based adjudication." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th. Cir. 2010). The court turns to the merits of Plaintiff's claims now.

     b. Race-Based Claims

Title VII prohibits an employer from "discharging any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides that "[a]ll persons . . . shall have the same right to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Both statutes provide

9

remedies for plaintiffs alleging employment discrimination based on race and are governed by the same standard. *See Guessous v. Fairview Prop. Invs.*, LLC, 828 F.3d 208, 216 (4th Cir. 2016); *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004); *El-Reedy v. Abacus Tech. Corp.*, 273 F. Supp. 3d 596, 604 n.7 (D.S.C. 2017). As such, the court will analyze Plaintiff's Section 1981 and Title VII racial discrimination claims against INEOS together. The court will then consider Plaintiff's Section 1981 claim against Clark.[3]

A plaintiff alleging racial discrimination in violation of Title VII or Section 1981 may ultimately prove their case through either direct or circumstantial evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003). Absent direct evidence, a plaintiff can satisfy the elements of a prima facie case of discrimination by demonstrating their "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010).

To survive a motion to dismiss, a plaintiff does not need to plead a prima facie case of discrimination, which "is an evidentiary standard." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). But the plaintiff must still "offer[] sufficient factual allegations to support a plausible claim that the" defendant engaged in discriminatory conduct. *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). In other words, it's not enough to allege that a defendant took some action because of discriminatory bias; that "is simply too conclusory." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015). Rather, the plaintiff must present sufficient factual matter to "support a *reasonable inference* that the

---

[3] For decades, the law in the Fourth Circuit has been clear that "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). Thus, the court dismisses Plaintiff's Title VII claims against Clark.

10

decisionmakers were motivated by bias." *Id.* (emphasis in original). As such, courts may still "look to the requirements of a prima face case as a guide in assessing the plausibility of plaintiff's claim for relief." *Craft v. Fairfax County Govt.*, No. 1:16-CV-86, 2016 WL 1643433, at \*4 (E.D. Va. Apr. 26, 2016).

The Amended Complaint does not plausibly allege direct evidence of racial discrimination. Plaintiff alleges that she "experienc[ed] hostility" from a "white male" coworker, but does not allege that such "hostility" was related in any way to her race. DE 17 at 5. Title VII and Section 1981 do not mandate "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). And they do not proscribe "general bad acts." *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011). Plaintiff's reference to "hostility" from a white coworker is too vague to support a claim for racial discrimination.

In addition, the Amended Complaint alleges that Plaintiff was "terminated on the basis of her race" and "replaced by a white male." DE 17 at 6. The termination allegation is "simply too conclusory." *McCleary-Evans*, 780 F.3d at 586. On a motion to dismiss, the court will not accept as true such a "naked assertion[] devoid of further factual enhancement." *ACA Financial*, 917 F.3d at 211. And although the allegation that Plaintiff was replaced by a white individual "is *consistent* with discrimination, it does not alone support a *reasonable inference* that the decisionmakers were motivated by bias." *McCleary-Evans*, 780 F.3d at 586 (emphasis in original).

The Amended Complaint likewise fails to plausibly set forth a prima facie case of racial discrimination because it contains no factual matter supporting that Plaintiff endured "different treatment from similarly situated employees outside the protected class." *Coleman,* 626 F.3d at 190. "When a plaintiff intends to rely on comparator evidence to show differential treatment," the plaintiff must plausibly allege that she and the comparator are "similarly situated in all material

11

respects." *Grant v. Atlas Rest. Grp. LLC*, No. 20-CV-2226, 2024 WL 473737, at *5 (D. Md. Feb. 7, 2024). "[E]mployees who do not report to the same supervisor, do not have the same job title, or do not have the same responsibility level, are not similarly situated." *Monk v. Potter*, 723 F. Supp. 2d 860, 877 (E.D. Va. 2010), *aff'd sub nom. Monk v. Donahoe*, 407 F. App'x 675 (4th Cir. 2011).

Plaintiff submits that she was treated differently than a white colleague who was not required to relocate to Raleigh like Plaintiff was. DE 17 at 4. But noticeably absent from the Amended Complaint is *any* allegation that Plaintiff and this other employee held the same position, had the same manager, or performed similar functions. *See id.* In fact, the Amended Complaint actually disclaims that Plaintiff and this other employee were similarly situated, by alleging that that Plaintiff "was the only person employed in her department." *Id.* at 3.

As such, even assuming Plaintiff suffered an adverse employment action by being required to relocate for her job,[4] and that she had performed satisfactorily in such job, she has not plausibly alleged differential treatment from a similarly situated employee. Accordingly, the Amended Complaint fails to state a Title VII or Section 1981 racial discrimination claim against INEOS, and Defendants' Motion to Dismiss is granted as to those claims.

Plaintiff also alleges that Clark is liable to her under Section 1981. DE 17 at 6-7; DE 26 at 9-10. Section 1981 guards "generally against race-based discrimination in the workplace." *Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 399 (4th Cir. 2021). A violation of § 1981 can only be based on intentional racial discrimination. *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458

---

[4] To be clear, "legitimate management decisions," such as requirements that an employee work in person, do not constitute adverse employment actions when they do not "materially harm the employee or her employment status." *Chapman v. Geithner*, No. 1:11-CV-1016, 2012 WL 1533514 at *23 (E.D. Va. Apr. 30, 2012), *aff'd*, 507 F. App'x 299 (4th Cir. 2013).

12

U.S. 375, 391 (1982). With respect to allegations against individuals for violations under Section 1981, as is the case with Plaintiff's claim against Clark, liability must be predicated on the actor's personal involvement. *Marshall v. C&S Rail Servs., LLC*, No. 1:19CV986, 2021 WL 1341801, at *6 (M.D.N.C. Apr. 9, 2021). Therefore, to prevail on a Section 1981 claim against an individual, a plaintiff must show that a specific defendant intentionally discriminated against him or her. *See id.*

Like the allegations against INEOS, the Amended Complaint does not contain any non-conclusory factual matter supporting that Clark intentionally discriminated against Plaintiff. In opposing Defendants' Motion to Dismiss, Plaintiff asserts that her "Amended Complaint of at least 81 allegations support[s] a claim" under Section 1981 against Clark, and that "Clark terminated Plaintiff." DE 26 at 10 (internal comma omitted). This non-specific and non-responsive assertion is unhelpful. And Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. In the absence of any *plausible* allegation that Plaintiff's termination was motivated by race, the court grants Defendants' Motion to Dismiss with respect to Plaintiff's Section 1981 claim against Clark.

    c.  <u>Sex-Based Claims</u>

        i.  *Discrimination*

The Amended Complaint also alleges that Plaintiff faced sex discrimination in violation of Title VII. DE 17 at 6-7. As discussed above, Title VII, among other things, prohibits discrimination based on sex. 42 U.S.C.A. § 2000e-2(a)(1). The only allegations in the Amended Complaint pertaining to sex discrimination are statements that "INEOS treated Plaintiff less favorable [sic] because of her [] gender," and "Plaintiff was wrongfully terminated on the basis of her [] gender for objecting to [] Clark's advances." *Id.* at 6. Both statements are conclusory

13

assertions that fall well short of a plausible claim for relief, and the second statement sounds in retaliation, not direct discrimination. Accordingly, the court will consider that allegation in the context of Plaintiff's Title VII retaliation claim, and grants Defendants' Motion to Dismiss with respect to Plaintiff's Title VII sex discrimination claims.[5]

### ii. Hostile Work Environment

The Amended Complaint alleges that Defendants fostered a hostile work environment. DE 17 at 6-7. Specifically, Plaintiff alleges that Clark called her "sweetheart" approximately "one [sic] or twice a week" for a few months, even though she "informed him on multiple occasions" not to do so. *Id.* at 6. In responding to Defendants' Motion to Dismiss, Plaintiff also contends that INEOS is liable for a hostile work environment because it "allow[ed] Plaintiff to be bullied by co-worker, Steve Jeffes causing her anxiety and fear." DE 26 at 11. These allegations do not plausibly give rise to a hostile work environment.

A hostile workplace exists when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To survive a motion to dismiss on a hostile work environment claim, the plaintiff must plausibly allege "(1) unwelcome conduct; (2) that is based on the plaintiff's sex [] ; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and

---

[5] The Amended Complaint also alleges that "male employees were [] given relocation arrangements that accommodated a transition timeframe that befitted their life and family commitments." DE 17 at 4. Again, even crediting the dubious premise that a relocation requirement can constitute an adverse employment action, Plaintiff fails to allege that these other employees were similarly situated to her in any way. Thus, her vague allegation about disparate relocation practices cannot sustain a sex discrimination claim under Title VII.

14

to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011).

Whether an "environment is objectively hostile is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Oncale*, 523 U.S. at 81). "That determination is made by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. Mere "utterance of an epithet which engenders offensive feelings in an employee," or "simple teasing and offhand comments" are insufficient to implicate Title VII. *Id*. Plaintiffs must "clear a high bar in order to satisfy the severe or pervasive test" of a hostile work environment claim. *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). The work environment must be "pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate, thereby creating an abusive atmosphere." *Id.* at 316.

Here, the Amended Complaint fails to plausibly allege an objectively hostile work environment. *Boyer-Liberto*, 786 F.3d at 277. Plaintiff alleges that Clark called her "sweetheart" "about one [sic] or twice a week," that she "informed him on multiple occasions not to call her 'sweetheart,'" and that he "continued to do so." DE 17 at 6. That alleged conduct is neither severe nor pervasive enough to have altered the conditions of Plaintiff's employment and create an abusive environment. *See, e.g.*, *Russell v. Univ. of Texas of Permian Basin*, 234 F. App'x 195, 205 (5th Cir. 2007) (evidence that defendant "called [plaintiff] 'honey' or 'babe' on numerous occasions . . . did not demonstrate a hostile work environment"); *Fermin v. Marriott Corp.*, No. 99-CV-3011, 2002 WL 31528617, at *1 (E.D.N.Y. Aug. 12, 2002) (plaintiff's "claim [] that her supervisor called her 'sweetheart,' 'sweetie,' 'honey' or 'baby occasionally during her two-year

15

tenure" did not "evidence pervasive misconduct"); *Maddin v. GTE of Fla., Inc.*, 33 F. Supp. 2d 1027, 1032 (M.D. Fla. 1999) (allegation that employer "repeatedly address[ed plaintiff] with the terms 'gorgeous,' 'babe,' 'doll,' 'good-looking,' 'honey,' 'sweety,' and 'beautiful'" did "not rise to the level of severe or pervasive harassment"). Plaintiff "may have" considered the term sweetheart to be "annoying, boorish, or even offensive," but that does not mean Clark engaged in "severe and pervasive harassment." *Byrd v. Donahoe*, No. 1:11-CV-00208, 2013 WL 12097641, at \*13 (N.D. Ga. Oct. 18, 2013) (addressing claim that supervisor called plaintiff "sweetheart and darling and pinch[ed plaintiff's] cheek") (internal quotation marks omitted), *recommendation adopted*, No. 1:11-CV-208, 2013 WL 12106197 (N.D. Ga. Nov. 21, 2013), *aff'd sub nom. Byrd v. Postmaster Gen.*, 582 F. App'x 787 (11th Cir. 2014). "[O]ccasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers," does not give rise to a hostile work environment claim. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995).

In that regard, the Fourth Circuit has made clear that "Title VII is not a federal guarantee of refinement and sophistication in the workplace—in this context, it prohibits only harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997). Allegations of sporadic use of the term "sweetheart" do not satisfy that standard. The Amended Complaint does not allege that Plaintiff experienced any overtly sexual commentary, that she was ever physically touched, or that she was ever threatened. Even if Plaintiff was displeased or offended by Clark's alleged comments, her *subjective* sensitivity to those comments does not render her workplace *objectively* hostile. *See Oncale*, 523 U.S. at 81 (emphasizing that courts must "not mistake ordinary socializing in the workplace—such as . . . intersexual flirtation—for discriminatory conditions of employment") (internal quotation marks omitted).

16

Plaintiff further contends that INEOS can face liability for a hostile work environment because Clark was aware that Jeffes "bullied" her. DE 26 at 11. This contention is similarly unavailing, for two reasons. First, the Amended Complaint does not contain any factual matter that would support that this alleged bullying was "sufficiently severe or pervasive to alter the plaintiff's conditions of employment." *Okoli*, 648 F.3d at 220.[6] And second, the Amended Complaint's vague reference to "hostility" and "bullying," DE 17 at 5, does not permit the inference that such conduct was "based on [P]laintiff's sex," *Okoli*, 648 F.3d at 220. In sum, the Amended Complaint fails to state a claim for a hostile work environment, and Defendants' Motion to Dismiss is granted with respect to that claim.

   iii. *Retaliation*

The Amended Complaint next alleges that Clark terminated Plaintiff for her "verbal opposition to his advances" toward her. DE 17 at 8. Title VII "proscribes discrimination against an employee because . . . she has opposed any practice made an unlawful employment practice" under Title VII. *Boyer-Liberto*, 786 F.3d at 281. To establish a prima facie case of retaliation, a plaintiff must allege "(1) that she engaged in a protected activity;" "(2) that her employer took an adverse employment action against her;" and "(3) that there was a causal link between the two events." *Id.* (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005).

Plaintiff plausibly alleged an adverse employment action; she was fired. *See Laughlin v. Metropolitan Washington Airports* Authority, 149 F.3d 253, 258 (4th Cir. 1998). The court will also assume without deciding that the Amended Complaint sets forth a plausible causal link

---

[6] Defendants attached the WhatsApp messages between Plaintiff and Clark to their Motion to Dismiss, which the court may consider because Plaintiff explicitly relied on those messages to support her hostile work environment claim. *See* DE 17 at 5; *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). The only specific example of supposed "hostility" that Plaintiff included in her message to Clark is that Jeffes apparently left her "off of [an] email communication" with other coworkers. DE 22-1 at 2. The court is allowed to use its "common sense" when resolving a motion to dismiss, *Iqbal*, 556 U.S. at 679, and finds that a workplace gripe of this sort is "genuinely trivial," *Carter v. Ball*, 33 F.3d 450, 461 (4th Cir. 1994).

17

between Plaintiff's complaints to Clark and her termination based on their temporal proximity. *See Kroboth v. Eli Lilly and Company*, No. 5:19-CV-222, 2023 WL 2702539, at *9 (E.D.N.C. Mar. 29, 2023).

But the Amended Complaint fails to state a retaliation claim because it does not plausibly allege that Plaintiff engaged in protected activity. Employees engage in protected activity when they "complain to their superiors about suspected violations of Title VII." *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 543–44 (4th Cir. 2003). This includes "employment actions" that the employee "*reasonably* believes to be unlawful." *Boyer-Liberto*, 786 F.3d at 281 (emphasis added). A court may "assess[] the reasonableness of an employee's belief that a hostile environment is occurring" by "focus[ing] . . . on the severity of the harassment." *Id.* at 284.

The court finds that Plaintiff's complaints to Clark to stop calling her "sweetheart" do not manifest an objectively reasonable belief that Plaintiff was complaining "about [a] suspected violation[] of Title VII." *Bryant*, 333 F.3d at 543–44. In that regard, the court has already held that such conduct did not give rise to a hostile work environment; Clark's alleged conduct "does not" come close to "cross[ing] the threshold into illegal sexual harassment under Fourth Circuit law." *Sraver v. Surgical Monitoring Servs., Inc.*, No. 05-CV-1331, 2006 WL 2190727, at *6 (D. Md. July 27, 2006). Moreover, other federal courts have routinely held that similar workplace conduct is insufficient to demonstrate a hostile work environment. *See, e.g.*, *Russell*, 234 F. App'x at 205; *Fermin*, 2002 WL 31528617, at *1; *Maddin*, 33 F. Supp. 2d at 1032; *Byrd*, 2013 WL 12097641, at *13. Thus, "[w]hile there is no doubt that [P]laintiff subjectively believed that" Clark's use of the term sweetheart "created a hostile work environment, such a belief was not objectively reasonable." *Mangum v. Town of Holly Springs*, 551 F. Supp. 2d 439, 446 (E.D.N.C. 2008). Put another way, Plaintiff may have been displeased with the moniker that Clark used with

18

her, but "[c]omplaints about a supervisor's rude conduct . . . are not protected activity." *Sara Kaye Ruffner v. MD OMG EMP LLC*, No. 11-CV-1880, 2012 WL 3542019, at *3 (D. Md. Aug. 13, 2012). The court grants Defendants' Motion to Dismiss with regard to Plaintiff's retaliation claim.

      d.   <u>Wrongful Termination in Violation of Public Policy</u>

The Amended Complaint also alleges that Plaintiff was "wrongfully terminated on the basis of her race and sex, for rejecting Clark's sexual advances toward her and her verbal opposition to his advances" in violation of public policy pursuant to N.C.G.S. § 143-422.2. DE 17 at 8. The North Carolina Equal Employment Practices Act provides that "an employer may not discriminate against an employee on the basis of 'race, religion, color, national origin, sex or handicap.'" *Sampson v. Hospira, Inc.*, 531 Fed. App'x. 388, 389 (4th Cir. 2013) (quoting N.C.G.S. § 143-422.2). Wrongful discharge claims under the Equal Employment Practices Act are analyzed under the same legal framework as federal anti-discrimination counterparts. *Id.* at 389-90; *see also North Carolina Dep't of Correction v. Gibson*, 308 N.C. 131, 136, 301 S.E.2d 78, 82 (1983) (explaining that North Carolina courts "look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases"). However, "North Carolina courts and federal courts applying North Carolina law have repeatedly found that" Section 143-422.2 does not provide a "private cause of action" for claims of "retaliation [or] hostile work environment." *Schmitz v. Alamance-Burlington Board of Education*, No. 1:18-CV-910, 2020 WL 924545, at *14 (M.D.N.C. Feb. 26, 2020); *see also Jones v. Duke Energy Corp.*, 43 F. App'x 599, 600 (4th Cir. 2002).

To the extent Plaintiff's claim for wrongful termination hinges on alleged retaliation or a hostile work environment, it fails because the relevant state law provides no private cause of action. Further, because the state law claim follows the same legal framework as federal antidiscrimination

statutes, any claim based on sex or race discrimination fails because the Amended Complaint does not plausibly state a claim for either sex or race discrimination under Title VII or Section 1981. Accordingly, the court grants Defendants' Motion to Dismiss with respect to Plaintiff's claim for wrongful termination in violation of public policy.

        e.   <u>Breach of Implied Contract</u>

Plaintiff next alleges that INEOS breached an implied contract with her, and that she is entitled to damages "based on the period after she was terminated, as well as loss of retirement, loss of benefits and her anticipated fees for work and expenses plus a termination fee." DE 17 at 9. This claim likewise fails as a matter of law.

The "general common law rule" in North Carolina is that "when a contract of employment does not fix a definite term the employment is terminable without cause at the will of either party." *Sides v. Duke University*, 74 N.C. App. 331, 336 (1985) (citing *Smith v. Ford Motor Co.,* 289 N.C. 71 (1976)). That is, in the "absence of a contractual agreement between an employer and employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party." *Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 331 (1997). There are "limited exceptions" to this rule, including contracts that specify "a definite term of employment," federal and state antidiscrimination statutes, and North Carolina's "public-policy exception." *Id.*

Here, the Amended Complaint does not allege that Plaintiff and INEOS entered into a contract that fixed a definite term of employment. *See generally* DE 17. Accordingly, Plaintiff was an at-will employee, and her termination does not represent a breach of her employment agreement. The Amended Complaint also does not allege any other factual matter that could

constitute a breach other than Plaintiff's termination. As such, Plaintiff's breach of implied contract claim fails.[7]

Additionally, in her response to Defendants' Motion to Dismiss, Plaintiff appears to suggest for the first time that she can maintain a negligent misrepresentation claim against INEOS, in that the company allegedly induced Plaintiff to accept an offer of employment and relocate to Raleigh based on "false representations regarding the conditions of her employment." DE 26 at 13. The court has no reason to pass upon the sufficiency of these allegations, because "[i]t is well-established that parties cannot amend their complaints through briefing." *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands,* LLC, 713 F.3d 175, 184 (4th Cir. 2013). Defendants' motion to dismiss is granted as to Plaintiff's claim for breach of implied contract.

### f. Breach of Implied Duty of Good Faith and Fair Dealing

Plaintiff next brings a claim for breach of implied duty of good faith and fair dealing against INEOS. DE 17 at 10. North Carolina courts have held that "where a party's claim for breach of the implied covenant of good faith and fair dealing is based upon the same acts as its claim for breach of contract," the court should "treat the former claim as 'part and parcel' of the latter." *Cordaro v. Harringon Bank, FSB,* 260 N.C. App. 26, 38-39, 817 S.E.2d 247, 256 (2018) (quoting *Murray v. Nationwide Mutual Ins. Co.*, 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996)); *see also Suntrust Bank v. Bryant/Sutphin Props., LLC*, 222 N.C. App. 821, 833, 732 S.E.2d 594, 603 (2012).

Because Plaintiff's breach of implied contract claim fails, so too does her claim for breach of implied duty of good faith and fair dealing. The Amended Complaint merely alleges that

---

[7] The court further finds that, because Plaintiff does not plausibly allege that her employment was terminated based on an impermissible consideration, or in violation of public policy, she does not qualify for the other exceptions to the terminable-at-will rule.

21

"INEOS breached its implied duty of good faith and fair dealing in their dealings with plaintiff in connection with the employment agreement." DE 17 at 10. That statement is a pure "legal conclusion" and fails to state a plausible claim for relief. *Iqbal*, 555 U.S. 678. Defendants' Motion to Dismiss is granted with respect to this claim.

> g. <u>Tortious Interference with Contract</u>

Plaintiff next brings a claim for tortious interference with contract against Clark, alleging that she had a valid employment contract with INEOS, and that Clark, "intentionally interfered with Plaintiff's regular course of business." DE 17 at 9. The elements of a claim for tortious interference with contract are: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 700, 784 S.E.2d 457, 462 (2016).

Plaintiff's tortious interference claim faces an immediate and considerable obstacle because Clark was employed by, and thus an agent of, INEOS. Acts of an agent are imputable to the principal. *See Branch v. Dempsey*, 265 N.C. 733, 740–41, 145 S.E.2d 395, 400–01 (1965). Thus, the Amended Complaint alleges, in essence, that INEOS interfered with its own contract. But "[b]oth North Carolina and federal courts interpreting North Carolina law have consistently held that a party to a contract cannot tortiously interfere with its own contract." *Billos v. Evonik Stockhausen, LLC*, No. 1:11-CV-905, 2012 WL 3835899, at *3 (M.D.N.C. Sept. 4, 2012) (collecting cases).

In order to state a claim for tortious interference against a non-outsider to a contract, such as Clark, Plaintiff must plausibly allege that Clark "acted with legal malice," meaning that he "exceed[ed] his legal right or authority in order to prevent the continuation of the contract between the parties." *Bloch v. The Paul Revere Life Ins. Co.*, 143 N.C. App. 228, 240, 547 S.E.2d 51, 60 (2001). Plaintiff contends that all of her other claims against Clark demonstrate that he acted with legal malice. *See* DE 26 at 15 ("Clark retaliated against Plaintiff for her: standing up for herself regarding the harassment she received; his inappropriate behavior towards her; rejecting his advances; and for Plaintiff holding the company to the promises they made in inducing her to work for the company. Additionally, Clark discriminated against Plaintiff and held her to a different standard than white employees."). But, as the court has previously described in detail, Plaintiff's claims for race discrimination, sex discrimination, hostile work environment, and retaliation all fail as a matter of law. Thus, those allegations are similarly insufficient to show that Clark acted with "legal malice." *Bloch*, 143 N.C. App. at 240, 547 S.E.2d at 60. Plaintiff's conclusory assertions to the contrary are unconvincing, and the court grants Defendants' Motion to Dismiss with respect to Plaintiff's tortious interference with contract claim.

        h. <u>Wage and Hour Act</u>

The final claim in the Amended Complaint is for a violation of the North Carolina Wage and Hour Act, N.C.G.S. §§ 95-25.2, 95-25.7. DE 17 at 10-11. Plaintiff alleges that INEOS failed to pay her "accrued and unused vacation pay upon her termination and withheld it as a condition of her agreeing to their settlement offer." *Id.* at 11. Plaintiff admits, however, that INEOS ultimately did render payment, albeit ten months after it was due. *Id.*

The North Carolina Wage and Hour Act requires that "[e]mployees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday."

N.C.G.S.§ 95-25.7. In this context, the term "wage" "includes sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." *Id.* § 95-25.2(16). Section 95-25.22 of the Act, which the Amended Complaint does not mention, provides the remedy for an employee affected by a violation of Section 95-25.7. It provides that "[a]ny employer who violates" the Wage and Hour Act "shall be liable to the employee . . . in the amount of their unpaid amounts due . . . *plus interest* . . . from the date each amount first came due." N.C.G.S.§ 95-25.22 (emphasis added).

In their Motion to Dismiss, Defendants do not attack the legal substance of Plaintiff's claim. Instead, they fault her for citing only Section 95-25.7, the provision that created INEOS' substantive liability, and not Section 95-25.22, the provision that creates Plaintiff's private cause of action. *See* DE 22 at 30. But Rule 8 only requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). The court is disinclined to reimpose the "hypertechnical, code-pleading regime of a prior era." *Iqbal*, 556 U.S. at 678. Plaintiff's allegations, accepted as true, state a claim for relief under the Wage and Hour Act because INEOS failed to pay her for her accrued vacation time for 10 months, which the court can reasonably infer fell well beyond "the next regular payday." N.C.G.S.§ 95-25.7.

Because Plaintiff admits INEOS did ultimately pay her for her accrued vacation time, it appears that INEOS' liability on this claim would be limited to any "interest" that accrued over the course of those 10 months. N.C.G.S. § 95-25.22.[8] But the small-dollar nature of the claim does not undermine its sufficiency. Defendants' Motion to Dismiss is denied as to Plaintiff's Wage and Hour Act claim.

---

[8] Plaintiff also seeks "Attorney's Fees," DE 17 at 11, which Section 95-25.22 also contemplates.

24

## V.    Conclusion

The Amended Complaint fails to state a plausible claim for relief with respect to every claim, except for Plaintiff's North Carolina Wage and Hour Act claim. Accordingly, Defendants' Motion to Dismiss is GRANTED IN PART with respect to Plaintiff's claims for (1) race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981; (2) sexual harassment and a hostile work environment in violation of Title VII; (3) retaliation in violation of Title VII; (4) wrongful termination in violation of public policy pursuant to N.C. Gen. Stat. § 143-422.2; (5) breach of implied contract; (6) tortious interference with employment contract; and (7) breach of implied duty of good faith and fair dealing.

Defendant's Motion to Dismiss is DENIED IN PART only with respect to Plaintiff's claim for a violation of North Carolina Wage and Hour Act, which shall proceed.

SO ORDERED this ___21st___ day of July, 2025.

Richard E Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

25